UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMIAH BOSHELL,

                Petitioner,

v.

JAMES CORRIGAN,

                Respondent.

Case No. 23-11612
District Judge Shalina D. Kumar
Magistrate Judge Curtis Ivy, Jr.

---

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

---

Jeremiah Boshell (Petitioner), incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for first-degree murder, Mich. Comp Laws § 750.316, assault with intent to commit murder, Mich. Comp Laws § 750.83, assault of a pregnant person with intent to cause miscarriage/stillbirth, Mich. Comp Laws § 750.90a, carrying a weapon with unlawful intent, Mich. Comp Laws § 750.226, felon in possession of a firearm, Mich. Comp Laws § 750.224f, third-degree fleeing or eluding a police officer, Mich. Comp Laws § 257.602a, and four counts of felony-firearm, second offense, Mich. Comp Laws § 750.227b.

For the reasons that follow, the petition for writ of habeas corpus is

DENIED WITH PREJUDICE.

## I. Background

Petitioner was convicted by a jury in the Macomb County Circuit

Court involving two separate cases that were consolidated for a single trial.

This Court recites verbatim the relevant facts relied upon by the Michigan

Court of Appeals, which are presumed correct on habeas review pursuant

to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th

Cir. 2009):

> Defendant's convictions in Docket No. 347208 arise from the shooting death of Lisa Fabbri in Macomb County. At the time of her death, Fabbri was 12 weeks' pregnant. Her body was found inside her car, which in turn was found in the backyard of defendant's friend, Wallace Grala. Defendant and Fabbri were an on-and-off couple for many years, and they had a 16-year-old son at the time of Fabbri's death.
>
> Grala lived on Frost Road in Lenox Township, which is in Macomb County. On the evening of August 14, 2016, defendant came over, unannounced, to visit Grala. Defendant was driving a gray F-150 pickup truck, and he drove it around Grala's attached garage and parked the vehicle behind the garage. At some point that evening, defendant used cocaine and donned a tactical vest. When Grala went to bed, defendant was still at the home. The next morning, on August 15, 2016, defendant was still present when Grala left for work.
>
> That same afternoon, Grala's neighbor, Beverly Burgess, noticed a gray pickup truck parked behind Grala's house. At approximately 5:00 p.m., she noticed activity coming from Grala's driveway. Specifically, she heard an "elevated"

woman's voice, which sounded angry or upset. Then Beverly saw a PT Cruiser in Grala's driveway with a woman next to it. At approximately 5:15 p.m., Beverly heard a gunshot, which sounded like it came from a smaller firearm—not a rifle. Beverly's husband, Bill Burgess, arrived home shortly thereafter around 5:30 p.m. After Bill arrived home, Beverly heard a truck "take off" on the gravel road. She explained that the truck had come from next door and that it was accelerating quickly on Frost Road. Beverly did not get a good look at the truck but saw that it was an "obscure gray" color. Bill identified the vehicle as a gray Ford pickup truck, which he recognized was not Grala's.

The next morning, August 16, 2016, Grala went out to his barn and saw a car parked in his field. Upon closer inspection, Grala saw that the car was Fabbri's PT Cruiser and that Fabbri was "hunched over" with blood all over herself. Grala called 911. Fabbri's death was classified as a homicide. She had been shot in the left side of the forehead, with an exit wound out the back, right portion of her head. The presence of stippling indicated that the gun was anywhere from three to six inches away from Fabbri's head at the time of the shooting. In the ensuing police investigation, tracks were noticed leading from Grala's driveway and terminating where the PT Cruiser was parked. The police recovered a spent shell casing from Grala's driveway and a bullet from the PT Cruiser's passenger-side door.

Later in the afternoon on August 16, 2016, defendant drove to a couple of different transmission shops in the Lapeer area, looking for two people named "Rob" and "Dylan." Defendant was wearing his tactical vest with lots of ammunition and had an AR-15 rifle, a shotgun, and a nine-millimeter handgun in the truck. Defendant was acting very upset and repeatedly stated that he was going to kill Rob and Dylan because he believed they had "set up" his girlfriend "to get whacked." The police were notified and were on the lookout for defendant.

Defendant's convictions in Docket No. 347207 arise from a series of offenses committed after the police eventually spotted defendant driving in Lapeer County, which led to a police chase. There were numerous vehicles involved in the chase,

3

including unmarked vehicles from the Macomb County Sheriff's Department, marked and unmarked vehicles from the Lapeer County Sheriff's Department, and marked Michigan State Police vehicles. Evidence was presented that during the pursuit, defendant fired a gunshot out of his driver's side window. Neighbors heard the gunshot, and a bullet was later found inside one of the homes. There also was a large amount of broken glass in the street.

The pursuit continued onto North Saginaw Street. Defendant was driving erratically and aggressively, including in the oncoming traffic lane, at a high rate of speed. Defendant passed a pedestrian, Virgil Nordlund, narrowly missing him. According to Nordlund, defendant fired a shot out his passenger-side window, which caused glass to shatter and fall onto the road. Nordlund, a Vietnam veteran, testified that he heard and felt the bullet fly right by his head. Seconds later, as Detectives James Onyski and Grant Perry approached in an unmarked police vehicle, defendant fired another shot out his driver's side window, causing more glass to shatter. The pursuit continued for many more miles, ultimately ending on I-69, where defendant was apprehended after his vehicle ended up in a side ditch.

The police recovered an AR-15 rifle, a shotgun, a nine-millimeter pistol, and lot of ammunition from defendant's vehicle. The shell casing that was found in Grala's driveway was positively identified as having been fired from the nine-millimeter handgun found in defendant's possession. The spent bullet found in the PT Cruiser passenger door was of the same class to have been fired from the nine-millimeter gun, but it could not be positively identified as having been fired from any particular firearm.

Defendant was charged in Docket No. 347208 for the offenses related to Fabbri's shooting death in Macomb County and charged in Docket No. 347207 for the offenses associated with the police pursuit in Lapeer County. Both cases were prosecuted in Macomb County. Defendant moved to dismiss the crimes alleged to have been committed in Lapeer County,

4

arguing that venue was not proper in Macomb County. The trial court denied the motion. The two cases were consolidated for trial, and defendant was convicted of the offenses as noted above. This appeal followed.

*People v. Boshell*, 337 Mich. App. 322, 327–30, 975 N.W.2d

72, 78–79 (2021); *lv. den.* 980 N.W.2d 703 (Mich. 2022).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Trial court erred by admitting irrelevant and unfairly prejudicial evidence that invited the jury to make adverse character inferences against Boshell.

II. The jury was exposed to a photograph of Boshell in the Macomb County jail that was overly prejudicial and affected his presumption of innocence.

III. The venue for the trial was improper because he was tried in Macomb County for criminal offenses allegedly committed in Lapeer County.

IV. Boshell was denied his Sixth Amendment right to a fair and impartial jury when the trial court acted as a second prosecutor.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

6

To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.,* at 103.

## III. Discussion

### A. Claim # 1. The prejudicial evidence claim.

Petitioner first claims that the trial court erred in admitting a photograph taken during Lisa Fabbri's autopsy of her 12-week-old fetus. Petitioner argues that the photograph of the fetus was unduly prejudicial in that it only served to inflame the jury. Petitioner also claims that the trial judge erred in admitting several text messages between himself and Ms. Fabbri prior to her death, in which the petitioner used demeaning comments towards the victim, such as calling her a "whore" and a "floozy." Petitioner also used vulgar sexual language in these text messages to request oral sex from Ms. Fabbri. Petitioner claims that this evidence was used solely by the prosecutor to paint him as a bad character who would have the propensity to commit the charged crimes.   Petitioner argues that both the autopsy photograph and the text messages were irrelevant and more prejudicial than probative.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *See also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

Petitioner's claim that any of this evidence should have been excluded under M.R.E. 403 for being more prejudicial than probative does not entitle petitioner to habeas relief.  The Sixth Circuit observed that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process."

8

*Blackmon v. Booker*, 696 F. 3d 536, 551 (6th Cir. 2012) (emphasis

original).  The Michigan Court of Appeals concluded that both the autopsy

photograph of the fetus and the text messages were relevant under

Michigan law for various reasons. *People v. Boshell*, 337 Mich. App. at 331,

333. This Court must defer to that determination.

      With respect to petitioner's argument that the photograph of the fetus

was unduly gruesome, the Michigan Court of Appeals rejected this claim:

> Initially, we note that, when defendant raised this evidentiary issue before trial commenced, the prosecution offered to submit a black-and-white version of the initially proposed true-color exhibit because its appearance was less gruesome. The prosecution also offered to crop out some "wetness" along the bottom of the photograph, so the focus would solely be on the sac and fetus. The trial court agreed that admitting the cropped, black-and-white version was permissible under MRE 403. The copy of the photo that defense counsel provided to this Court looks more like an illustration from a textbook or dictionary, or a copy of an ultrasound photo. While a fetus is identifiable, the black-and-white photo lacks any "gruesomeness" factor. The mere fact that it displays a fetus is not unfairly prejudicial to defendant because, as previously discussed, that is what makes the photo relevant and probative. Because of the lack of color and resulting lack of details, such as blood or other "wetness," we cannot see how the photo's introduction injected any risk of unfair prejudice. Moreover, assuming any unfair prejudice was introduced, it did not substantially outweigh the probative value of the evidence. Accordingly, the trial court did not abuse its discretion by admitting this exhibit.
>
> *People v. Boshell*, 337 Mich. App. at 332.

Petitioner's claim that the trial court admitted a photograph of the murder victim's fetus fails to state a claim upon which habeas relief can be granted. Federal courts have recognized that admission of photographs which depict a murder victim, or which are taken during an autopsy, when relevant to an issue at trial, do not deprive a criminal defendant of a fair trial. *See e.g. Franklin v. Bradshaw,* 695 F.3d 439, 456-57 (6th Cir. 2012); *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003); *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002); *See also Johnson v. Westbrooks*, No. 16-6799, 2017 WL 6398034, at * 2 (6th Cir. July 21, 2017) (denying a certificate of appealability on a habeas petitioner's due process claim that the trial court should have excluded photographs of the murder victim's unborn child).

Petitioner's claim that the text messages between himself and the murder victim were admitted solely to show that he was a bad character and hence more likely to commit the murder and the other offenses does not entitle him to relief. Petitioner's claim that the state court violated M.R.E. 404(b) or any other provision of state law by admitting any improper character evidence or evidence of prior bad acts is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F. 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit

Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law).  The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to relief on his first claim.

**B. Claim # 2. The mistrial claim.**

Petitioner next argues that the judge should have granted his request for a mistrial after a photograph showing petitioner in jail shortly after his arrest was inadvertently shown to the jurors.

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity. *Walls v. Konteh,* 490 F. 3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F 3d 352, 354-55 (6th Cir. 1994).

The Sixth Circuit has held that the admission of a habeas petitioner's mug shots into evidence is non-cognizable on federal habeas review. *See Gant v. Kropp,* 407 F. 2d 776, 777-78 (6th Cir. 1969).  In the present case,

11

the jury was not even shown petitioner's mug shots. As the prosecutor

noted when opposing petitioner's motion for a mistrial, the photo did not

show petitioner "behind bars, handcuffed, or in jail attire; instead, the

picture merely showed [petitioner] standing with his hands behind his back.

Further, the background of the photo was a plain, 'yellowish,' 'tile wall,' with

no indication that this was a jail setting." *People v. Boshell*, 337 Mich. App.

at 337. The prosecutor also argued that this photograph was not unduly

prejudicial because the jury had already seen a video recording where

petitioner was handcuffed after he was arrested following the high speed

chase. *Id.*

In denying the motion for a mistrial, the judge noted that petitioner

appeared in the picture:

> in what can be best described as an at ease stance if one were
> in an Army type of pose. He has his hands behind his back. But
> he doesn't appear, I mean he clearly doesn't appear like he's
> shackled, like he's restrained, nor does it look like a mug shot. It
> is simply a photograph of him up against a wall.

> *Id.*

The Michigan Court of Appeals concluded that the trial judge did not

err in refusing to grant a mistrial because:

> After reviewing the inadvertently shown photo, it is clear that
> defendant was not deprived of a fair trial. As the trial court
> correctly observed, there is no explicit indication in the

12

inadvertently shown photo that defendant was in jail. There are no visible handcuffs or any other types of restraints. There also is no prison garb or attire. Additionally, the fact that defendant's hands are behind his back in the inadvertently shown photo is not pertinent because this is seen in the noncontested and admitted photo as well. Further, the background appears to be a nondescript "tile wall." While jurors could speculate that this photo was indeed taken from a jail, according to the trial court's description, *there is nothing that expressly indicates that this was taken from jail*. In sum, the photo did not suggest that defendant was in a jail, and it did not, somehow, taint his presumption of innocence. Accordingly, the brief display of the photograph did not deprive defendant of a fair trial.

*People v. Boshell*, 337 Mich. App. at 338 (emphasis original).

The Michigan Court of Appeals' decision was reasonable, precluding habeas relief. *See United States v. Simmons*, 581 F.3d 582, 588–89 (7th Cir. 2009)(prosecutor's improper use of defendant's mug shot photograph in trial exhibit did not require granting of defendant's motion for mistrial; the mug shot was not displayed before the jury for an extended period of time, the photo was a head-and-shoulders shot that displayed only the neckline of defendant's orange shirt, but contained no date or other markings from the jail, it was no secret that defendant had been arrested, and the trial court removed the offending photo immediately).

In this case, there was no clear indication from the photograph that petitioner was in jail or even under arrest.  Petitioner is not entitled to relief on his second claim.

### C. Claim # 3. The improper venue claim.

Petitioner argues he is entitled to a new trial because the Macomb County Circuit Court was not the proper venue to try petitioner for the offenses which took place in Lapeer County.

Petitioner's improper venue claim is non-cognizable on habeas review. *See Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.1978) (claim of improper venue not cognizable on habeas or post-conviction review). Although the "vicinage" clause of the Sixth Amendment to the United States Constitution guarantees a federal defendant the right to be tried by a jury of the district in which the crime has been committed, this right applies solely to federal criminal trials and the Fourteenth Amendment did not extend the vicinage clause to state criminal trials. *Caudill v. Scott*, 857 F.2d 344, 345–46 (6th Cir. 1988); *See also Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004).  Even in a federal criminal trial, the failure to establish venue is not grounds for federal post-conviction relief because, "in the absence of any allegation of bad faith on the part of the Government or prejudice to the defendant, improper venue will not ordinarily result in a 'miscarriage of justice,' and presents no extraordinary need for post-

conviction relief." *Williams*, 582 F.2d at 1042.  Accordingly, petitioner is not

entitled to habeas relief on his third claim.

### D. Claim # 4. The judicial misconduct claim.

Finally, petitioner claims that the judge pierced the veil of judicial

impartiality by extensively questioning defense expert, David Balash.  In

reviewing the issue, the Michigan Court of Appeals noted that:

> During Balash's testimony, the trial court asked numerous
> questions of the witness. Many of the questions were focused
> on the presence, or lack of presence, of a metal jacket with the
> fragments that were found in the utility pole. The judge's
> questioning occurred multiple times, with the first session
> occurring during defense counsel's examination of Balash. The
> second occasion occurred after the prosecutor concluded his
> questioning. After the parties followed up with a few questions
> of their own, the trial judge revisited the topic once again,
> asking several more questions.

*People v. Boshell*, 337 Mich. App. at 347.

The Due Process Clause of the Fourteenth Amendment requires a

fair trial in a fair tribunal before a judge with no actual bias against the

defendant or an interest in the outcome of the case. *See Bracy v. Gramley*,

520 U.S. 899, 904-05 (1997).  The right to an impartial judge is a right

whose deprivation a state prisoner may complain of in a federal habeas

corpus proceeding. *Tyson v. Trigg*, 50 F.3d 436, 438 (7th Cir. 1995) (citing

to *Turner v. Ohio*, 273 U.S. 510, 523 (1927); *In Re Murchison*, 349 U.S.

133 (1955)).  Trial judges have a wide latitude in conducting trials, but they must preserve an attitude of impartiality and scrupulously avoid giving the jury the impression that the judge believes that the defendant is guilty. *Harrington v. State of Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997); *Brown v. Palmer,* 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

However, in reviewing an allegation of judicial misconduct in a habeas corpus petition, a federal court must ask itself whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995); *Brown v. Palmer,* 358 F. Supp. 2d at 657.  To sustain an allegation of bias by a state trial judge as a grounds for habeas relief, a habeas petitioner must factually demonstrate that during the trial the judge assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being more than an impartial observer. *Brinlee v. Crisp*, 608 F.2d 839, 852-53 (10th Cir. 1979); *Brown,* 358 F. Supp. 2d at 657.  A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a significant degree before habeas relief could be granted. *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *Brown,* 358 F. Supp. 2d at 657.

Finally, the pertinent question on habeas review is not whether the judge's questions or comments might constitute reversible error if the conviction was being reviewed on direct review but whether the state appellate court's rejection of the judicial misconduct claim was a reasonable or unreasonable application of clearly established federal law. *See e.g. Allen v. Hawley*, 74 F. App'x 457, 460-61 (6th Cir. 2003).

A trial judge may interject himself or herself "into the trial, speak to counsel, and question witnesses in order to clear up confusion regarding the evidence or aid in its orderly presentation." *United States v. Powers*, 500 F.3d 500, 511 (6th Cir. 2007).  It is not unconstitutional under the Due Process Clause for a state trial judge to seek clarification from witnesses at a criminal trial. *Brown v. Palmer,* 358 F. Supp. 2d at 657; *See also Wenglikowski v. Jones,* 306 F. Supp. 2d 688, 695 (E.D. Mich. 2004).  "In fact, it is proper for a judge to question a witness when necessary either to elicit the truth or to clarify testimony." *Brown,* 358 F. Supp. 2d at 657.

In the present case, the trial court judge interjected himself only to clarify what he believed to be an inconsistent opinion by Mr. Balash.  It appears, and the Michigan Court of Appeals found, that there was no such inconsistency in Mr. Balash's testimony and that it was the judge himself who was confused about the nature of the testimony. *People v. Boshell*,

17

337 Mich. App. at 350, 352. Nonetheless, the Michigan Court of Appeals rejected petitioner's judicial misconduct claim because the judge's questions did not appear to be hostile. *Id.* at 351. The Michigan Court of Appeals further noted that the judge asked other witnesses questions as well. *Id.*, at 353.

There is no United States Supreme Court holding which supports a finding of judicial bias flowing from a judge's interrogation of a criminal defendant or his or her defense witness, hence, the Michigan Court of Appeals' rejection of petitioner's claim was reasonable. See *Elizondo v. Bauman*, 674 F. App'x 561, 562 (6th Cir. 2017).

Finally, any prejudice from the judge's questions was also cured by the fact that the judge instructed the jury that his comments, rulings, and instructions were not evidence and further advised the jurors that if they believed that the judge had an opinion about how they should decide the case, that they should disregard that opinion and that they were the only judges of the facts.  (ECF No. 9-14, PageID. 5105). *See Todd v. Stegal,* 40 F. App'x 25, 28 (6th Cir. 2002).  Petitioner is not entitled to relief on his fourth claim.

**IV. Conclusion**

For the reasons stated, the Court the petition is **DENIED WITH PREJUDICE.**

Before the petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003).  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that the petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability is not warranted in this case.  The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous and, as a result, not taken in good faith. *See* Fed.R.App. P. 24(a); 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED WITH PREJUDICE.** The Court declines to issue a certificate of appealability, and it is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED.**

<div style="margin-left:50%">

s/Shalina D. Kumar
Hon. Shalina D. Kumar
United States District Judge
</div>

Dated: April 30, 2024

20